UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

LORIE A. MARSHALL,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　　　)　　4:13-cv-33-PPS-JEM
　　　　　　　　　　　　　　　　　　)
CAROLYN W. COLVIN, Acting　　　　)
Commissioner of Social Security,　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　　　)

## OPINION AND ORDER

Plaintiff Lorie A. Marshall appeals the Social Security Administration's decision to deny her application for disability insurance benefits. An administrative law judge found Marshall was not disabled within the meaning of the Social Security Act. As explained below, I find the ALJ erred by disregarding the opinion of Marshall's treating psychiatrist and will therefore remand this matter to the ALJ to fully and properly develop the administrative record.

## BACKGROUND

Readers looking for a more extensive discussion of Marshall's medical record are directed to the detailed summaries in the ALJ's decision (R. 21-39) and in Marshall's opening brief [DE 24 at 8-17]. Rather than simply reiterating those summaries, I will give a brief overview of the history of Marshall's health issues.

Marshall has a long history of depression and physical problems, but she still managed to hold down a job as a sleep technologist at a hospital for several years. That

changed on January 6, 2012 when the forty-six-year-old Marshall suffered a "mental breakdown" after leaving work. She has not worked since. A few weeks after the breakdown, Marshall checked herself into the psychiatric unit at the St. Vincent Stress Center in Frankfort, Indiana. She stayed there for about a week and was diagnosed with major depressive disorder, recurrent, severe without psychosis. She was also diagnosed as having a borderline personality disorder. After her stay at the hospital, Marshall began seeing psychiatrist Dr. Steven Berger, M.D. Berger diagnosed Marshall as having depression, generalized anxiety disorder and post-traumatic stress disorder. He thought Marshall was in rough shape, assigning her a global assessment of functioning (GAF) score of 40. GAF scores reflect a clinician's judgment about the individual's overall level of functioning. The higher the GAF score, the better the individual's psychological, social, and occupational functioning. A score of 40 reflects serious symptoms. Berger prescribed medication and recommended weekly therapy. Marshall continued to see Berger every couple of months over the course of 2012, but showed only limited improvement.

In addition to her mental health problems, Marshall has a host of physical problems, including osteoarthritis, fibromyalgia, diabetes, peripheral neuropathy, GERD, irritable bowel syndrome, and interstitial cystitis. She is 5' 11" and weighed 377 pounds at the time of the hearing which equates to a BMI of 52 putting her well within the morbidly obese category.

Marshall applied for disability insurance benefits in February 2012, alleging a disability onset date of January 6, 2012. After a hearing before an ALJ in which Marshall testified, the ALJ issued a decision denying benefits. (R. 21-39.) The ALJ employed the standard five-step analysis. At step one, the ALJ confirmed that Marshall had not engaged in substantial gainful activity since her application date. At step two, the ALJ found Marshall suffered severe impairments of degenerative disc disease of the lumbar spine, interstitial cystitis, diabetes mellitus, fibromyalgia, hypertension, obesity, depression, anxiety, and borderline personality disorder. At step three the ALJ found that Marshall's conditions did not satisfy any listed impairment. At step four, in analyzing Marshall's residual functional capacity, the ALJ found that Marshall could perform light work with: sitting about 6 hours in an 8 hour work day; standing or walking about 6 hours in an 8 hour work day; no climbing ladders, ropes or scaffolds; no kneeling or crawling; no exposure to extreme cold, heat, wetness or humidity. The ALJ additionally determined that Marshall could sustain attention and concentration for two hour periods at a time, and for 8 hours in the workday on short, simple, repetitive instructions. At step five, the ALJ found Marshall could not perform past relevant work but there were a sufficiently significant number of jobs in the national economy she could perform.

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Marshall timely sought review of that decision by filing this case.

## DISCUSSION

My review of an ALJ's decision to deny social security benefits is limited to determining whether the decision is supported by substantial evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Id.*

Marshall objects to the ALJ's decision on four grounds: 1) The ALJ failed to give controlling weight to the opinion of her treating psychiatrist, Dr. Steven Berger; 2) the ALJ erred by deciding Marshall had the residual functional capacity to walk and stand for up to six hours a day when three physicians found otherwise; 3) the ALJ failed to properly articulate an analysis of the claimant's pain as required by SSR-96-7; and 4) the ALJ erred in his assessment of Marshall's credibility due to a misrepresentation of fact.

From my perspective, there is simply no getting around the first of these issues – the discounting of Dr. Berger's opinion. Berger opined that Marshall was unable to focus for more than a couple of sentences at a time and was incapable of completing basic tasks. (R. 950.) Berger judged that Marshall's psychiatric condition left her "completely unable to perform the duties of any employment" and he predicted prolonged illness and incapacity. *Id.* He assigned her a GAF score of 40, which reflects either some impairment in grasping reality or a serious impairment in areas like ability to work, judgment, thinking or mood. *See* Am. Psychiatric Assoc., Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed., Text Rev. 2000).

The ALJ didn't buy it, giving Berger's opinion "little weight." (R. 33.) A psychiatrist like Dr. Berger is deemed a "physician" for the purposes of the "treating physician rule, "in the sense that Berger is a medical expert with relevant expertise who treated the applicant. *See Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). Since Berger was Marshall's treating physician, the key question is whether the ALJ can point to contradicting evidence.

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); *see White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005). However, once well-supported contradicting evidence is introduced, the treating physician's opinion is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to weigh. *Bauer,* 532 F.3d at 608. This rule takes into account the treating physician's advantage in having personally examined the claimant and developed a rapport, while controlling for the biases that a treating physician may develop such as friendship with the patient. *Oakes v. Astrue*, 258 F. App'x 28, 43-44 (7th Cir. 2001); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

The ALJ found that Berger's opinion was inconsistent with the other evidence in the record. To start, he argues that the GAF score of 40 was inconsistent with the fact that Berger had previously assigned Marshall a GAF score of 50, "which is mostly indicative of moderate symptoms." (R. 33.) The ALJ is mistaken on two fronts here.

5

First, Berger did not assign Marshall a GAF score of 50; that score came from Marshall's therapist. (R. 624). Second, a GAF score of 50 is *not* indicative of moderate symptoms, it is indicative of serious symptoms. *See Jelinek v. Astrue*, 662 F.3d 805, 807 n.1 (7th Cir. 2011) (A GAF between 41 and 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shop-lifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).").

Next, the ALJ pointed to Dr. Berger's treatment notes, arguing that the signs of improvement recorded therein cast doubt on Berger's dire evaluation. (R. 33.) He focused on two entries in particular. First, in June 2012, Marshall reported that she was experiencing less depression. (R. 947.) Second, in November 2012, Marshall admitted that the medications were helping her depression, and Dr. Berger commented that Marshall did not cry during the session. (R. 1264.)

The Seventh Circuit has repeatedly exhorted ALJ's not to rely on isolated comments from treatment notes. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("a person who suffers from mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition"); *Scott v. Astrue*, 647 F.3d 734, 740-741 (7th Cir. 2011); *Phillips v. Astrue*, 413 Fed. App'x 878, 886 (7th Cir. 2010); *Bauer*, 532 F.3d at 609. Dr. Berger's treatment notes bear out the wisdom of this warning as Marshall's condition fluctuated — she had good days and bad. In May 2012, Marshall reported that she was severely depressed — an 8 out of 10 on the scale (R. 956), and was weeping during the session with Dr. Berger (R. 952.) The June visit

6

seems to reflect an improvement from the lows of May, but even then Marshall reports that she had difficulty focusing and was depressed at times. (R. 947.) In September, Marshall seems to have taken a step backwards, reporting that she was suicidal, crying daily and more depressed than she had been. (R. 1273.) The November report that the ALJ cited suggests progress, but Marshall still reports "I am really depressed today." (R. 1264.) In other words, the treatment notes are a mixed bag. The two notes that the ALJ pointed to may indicate Marshall had some good days, but they do not contradict Berger's assessment. *Scott*, 647 F.3d at 740 ("The ALJ was not permitted to "cherry-pick" from . . . mixed results to support a denial of benefits."); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (Cherry-picking treatment notes for positive assessments "demonstrate[s] a fundamental, but regrettably all-too-common, misunderstanding of mental illness.").

Along the same lines, the ALJ suggests that Dr. Berger's treatment recommendations are inconsistent with his opinion. (R. 33.) The ALJ notes that, after opining that Marshall was unable to work, Dr. Berger "merely recommended the claimant continue to take her medications, continue with psychotherapy, and return in 2 months." *Id.* The ALJ suggests this is a conservative treatment recommendation. It may be, but the ALJ does not *explain* the basis for this conclusion. Conservative compared to what? A hospital stay, perhaps, but Marshall had just gotten out of the hospital when Berger was treating her. Marshall argues, with some force, that the treatment regimen was aggressive, not conservative. Dr. Berger prescribed a battery of

7

medications to help deal with the depression, saw Marshall once a month or so, and prescribed weekly, hour-long, therapy sessions. (R. 806-812, 950-960, 1270-1274.) Now the ALJ might be right, and Marshall wrong, about the relative conservativeness of Berger's recommendations, but the ALJ needed to explain this rather than assert it — to provide the "logical bridge" between his conclusion and the evidence. Since the ALJ failed to do this, this reason, too, is insufficient to discount Berger's opinion. *See Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (the ALJ must provide a "logical bridge" from consideration of evidence); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998).

Lastly, the ALJ rejected Dr. Berger's opinion because it was inconsistent with the opinion of the consulting physician, Dr. Luella Bangura. (R. 33.) Maybe. Dr. Bangura examined Marshall in April 2012. From the report it appears that Dr. Bangura performed a physical examination of Marshall, checking her heart rate, lung function, testing her strength and range of motion, and performing other tests along the same lines. (R. 836-841.) There's no indication in the report that Dr. Bangura undertook a psychiatric examination of Marshall or that she performed any tests demonstrating Marshall's mental capacity. Nevertheless, at the conclusion of the report, Dr. Bangura concluded that Marshall had "limitations in . . . memory and understanding . . . sustained concentration . . . social interaction." (R. 840.)

This seems to me to support, rather than contradict, Dr. Berger's assessment of Marshall's ability to focus and complete tasks. But the Commissioner argues that there is a difference in the severity of the assessment. Berger opined that Marshall's mental

8

problems left her completely unable to perform any tasks, whereas Dr. Bangura can be understood as finding that Marshall would have limited ability, rather than an inability, to perform tasks. This inference is a pretty thin basis for rejecting a treating physician's opinion, but, Bangura was an examining physician, so her contradictory opinion, if that is what it is, does suffice as a reason to discount Berger's. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (If the treating physician's opinion is inconsistent with the consulting physician's opinion, the ALJ may discount it).

But that's not the end of the matter. Even if a treating physician's opinion is not accorded controlling weight, the ALJ must still determine how much weight to give it. *Scott*, 647 F.3d at 740. And, when making that determination, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion. 20 C.F.R. § 404.1527(d)(2); *Bauer*, 532 F.3d at 608 (stating that when the treating physician's opinion is not given controlling weight "the checklist comes into play").

Apart from noting the "inconsistencies" discussed above, the ALJ did not do this. He simply decided that Berger's opinion was entitled to "little weight." (R. 33.) Some of the checklist factors would have redounded in Berger's favor. For example he is a psychiatrist, and thus a mental health specialist, while Bangura, as far as I can tell from the record, is not. The checklist is designed to help the ALJ decide how much weight to give a treating physician's evidence and the failure to consult it is a reason to remand.

9

*See Mueller v. Astrue*, 493 Fed. App'x 772, 776-77 (7th Cir. 2012) (remanding an ALJ decision that did not consider the checklist factors); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (remanding an ALJ decision that "did not explicitly address the checklist of factors as applied to the medical evidence"); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (same). There is no indication in the record that the ALJ consulted the checklist before deciding that Berger's opinion was entitled to "little weight." Therefore, this case has to be remanded. The ALJ should address Marshall's other arguments as appropriate.

## CONCLUSION

For the reasons stated above, this cause is **REMANDED** for further proceedings consistent with this order.

**SO ORDERED.**

ENTERED: September 19, 2014      s/ Philip P. Simon
　　　　　　　　　　　　　　　　 PHILIP P. SIMON, CHIEF JUDGE
　　　　　　　　　　　　　　　　 UNITED STATES DISTRICT COURT